UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIMMY R. ST. CLAIR,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>STAN SCHLACHTER,<br><br>　　　　　Defendant. | No.  2:13-cv-804-KJM-EFB P (TEMP)<br><br><br>ORDER |

Plaintiff is a state prisoner proceeding with counsel in this civil rights action under 42 U.S.C. § 1983.  Plaintiff alleges that he was sexually assaulted by defendant Stan Schlachter, then a physical therapist at Mule Creek State Prison, in violation of plaintiff's Eighth Amendment right to be free of cruel and unusual punishment.

The matter is before the court on plaintiff's ex parte application to compel production of the Department of Consumer Affairs ("DCA") Stan Schlachter Investigative Files.  ECF No. 65.  Defendant has filed an opposition, as has Real Party in Interest, the Physical Therapy Board of California ("PTBC"), a subsidiary of the DCA and the entity in possession of the files sought.  For the reasons discussed below, plaintiff's ex parte application will be granted.

/////

/////

/////

1

**I. Background**

    **A. Plaintiff's Allegations**

Plaintiff alleges as follows in his verified complaint, ECF No. 1:

At all relevant times, plaintiff was an inmate at Mule Creek State Prison. *Id.* at 2. In May 2011, plaintiff was sent to the prison's Central Treatment Center in order to receive physical therapy for his lower back and spine from defendant Schlachter. *Id.* Defendant had treated plaintiff on approximately four prior occasions without incident. *Id.* On this occasion, as on previous occasions, defendant asked plaintiff to lay face-down on a massage table. *Id.* at 2-3. But on this occasion, defendant pressed down hard on plaintiff's buttocks while rubbing his penis against the top of plaintiff's head. *Id.* at 3. This continued for 4-6 minutes while plaintiff struggled unsuccessfully to get up. *Id.* According to plaintiff, he "was in agonizing pain from his chest and buttocks being pushed down against the massage table." *Id.* After defendant Schlachter released him, plaintiff told him, "I'm getting the sergeant." *Id.* Defendant Schlachter replied, "You say anything and I'll have you thrown in the hole. You'll never see daylight again." *Id.* Defendant then claimed to have access on his computer to information regarding plaintiff's family, and said he would "deal with [plaintiff's] family" if plaintiff spoke to anyone about the incident. *Id.* Plaintiff states that he delayed in reporting the incident because of these statements. *Id.*

    **B. Procedural Background**

This action commenced on April 24, 2013. In his verified complaint, plaintiff claims that defendant Schlachter, by sexually assaulting him, violated the Eighth Amendment's prohibition against cruel and unusual punishment. The allegations also appear to state a claim against defendant for retaliating against plaintiff for the exercise of his First Amendment rights.[1] On

/////

---

[1] "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-8 (9th Cir. 2004).

February 11, 2014, after screening the complaint, the court deemed service to be appropriate on defendant Schlachter. ECF No. 11.

The defendant filed an answer, ECF No. 19, and on May 22, 2014, the court issued a scheduling order setting a discovery deadline of September 12, 2014, and a motion filing deadline of December 5, 2014. ECF No. 20. Plaintiff filed a motion for partial summary judgment, ECF No. 27, which defendant opposed (ECF No. 28), and on March 30, 2015, the Honorable Kimberly J. Mueller adopted the magistrate judge's recommendation and denied plaintiff's motion. ECF Nos. 35, 37.

Soon thereafter, Judge Mueller determined that the facts of this case warranted the appointment of counsel, and on June 8, 2015, counsel was appointed for plaintiff. ECF Nos. 42, 45.

On October 20, 2015, following the appearance of plaintiff's counsel and the filing of a joint status report, Judge Mueller re-opened discovery to allow the depositions of the persons listed in the parties' joint statement, including Linda Strickland, a former investigator at the DCA; to allow for certain document requests; and to allow for certain third-party discovery, including from the designated person most knowledgeable of defendant's former employer. ECF No. 54. The discovery deadline was modified once more on April 5, 2016, following plaintiff's ex parte application for an extension of that deadline based, in part and relevant here, on his inability to locate Ms. Strickland. ECF Nos. 62, 64. The discovery deadline in this case was May 15, 2016, but the parties recently submitted a stipulation to revise that deadline again for the limited purpose of completing the deposition of, inter alia, Ms. Strickland, who has apparently been located but not yet served with a deposition subpoena.[2] ECF No. 69. That stipulation was approved by the district judge on May 18, 2016.

/////

---

[2] According to the parties' joint stipulation, filed May 12, 2016, the most recent information regarding Ms. Strickland's whereabouts is that she is in San Diego caring for her elderly mother. Jt. Stipulation ¶ 21. Plaintiff's counsel has been unsuccessful in gaining any additional information regarding Ms. Strickland's availability, and Ms. Strickland's husband has refused service of the deposition subpoena. *Id.* ¶¶ 21-22.

**C. Background Relevant to Plaintiff's Ex Parte Application**

During their initial evaluation of this case, plaintiff's counsel learned that Ms. Strickland conducted an investigation concerning plaintiff's allegations of sexual assault against defendant. In December 2015, plaintiff attempted to depose Ms. Strickland but was unable to serve the deposition subpoena because Ms. Strickland is no longer employed by the DCA and because plaintiff has "not succeeded in locating her at this point."[3] Decl. of Edward Gaus ("Gaus Decl.") Exs. A-B.

Unable to locate Ms. Strickland, plaintiff served a subpoena duces tecum on the DCA on February 25, 2016, to obtain a copy of the investigative files. Gaus Decl. Ex. C. On March 7, 2016, the DCA objected on the grounds that the subpoena (1) was not properly served, (2) seeks privileged documents, (3) seeks official government information, (4) seeks deliberative process information, (5) seeks attorney-client privilege communications, (6) seeks documents violating right to privacy, (7) seeks production of documents that are not business records, and (8) is barred by the Eleventh Amendment, *Estate of Gonzalez v. Hickman*, 466 F. Supp. 2d 1226 (E.D. Cal. Dec. 21, 2006). *Id.* Ex. D.

During a telephonic meet-and-confer with Angelique Scott, an attorney at the DCA, Ms. Scott expressed her reluctance to produce defendant's entire file but indicated that she would be willing to produce the investigative records subject to certain limitations.[4] She then instructed

---

[3] Plaintiff's counsel's declaration in support of the ex parte application does not detail his efforts in locating Ms. Strickland. *See* Gaus Decl. ECF No. 65-1. In a previously-filed ex parte application for leave to conduct limited discovery (which was based, in part, on inability to locate Ms. Strickland) plaintiff stated only that he "ha[d] conducted, and continues to conduct, searches for Ms. Strickland." ECF No. 62 at 5. Plaintiff's counsel also failed to support that statement with any information describing his efforts. *See* Gaus Decl. ECF No. 62-1. Without a proper declaration, plaintiff's factual assertions are devoid of evidentiary support. Nonetheless, the court accords plaintiff the benefit of the doubt and accepts counsel's representation that he has been diligent in attempting to locate Ms. Strickland. *See* Fed. R. Civ. P. 11(b)(3) ("By presenting to the court a . . . written motion . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . (3) the factual contentions have evidentiary support . . . ."). However, counsel is cautioned that future applications and supporting declarations must include the factual details to support an assertion due diligence.

[4] Plaintiff's ex parte application includes details of his meet-and-confer efforts with

plaintiff's counsel to send an updated subpoena directly to the Custodian of Records for the PTBC, which was the entity in actual possession of the records.

On March 9, 2016, plaintiff sent a second subpoena directly to PTBC, limiting his request to references and information pertaining only to plaintiff and another inmate, Ervin "Sonny" Savoy (now deceased), who made similar allegations against defendant. Gaus Decl. Ex. E.

On March 22, 2016, the DCA objected to plaintiff's second subpoena on the same grounds previously asserted. Gaus Decl. Ex. F. The parties met and conferred on April 7, 2016, at which time Ms. Scott informed plaintiff's counsel that the DCA had changed its mind and would not produce any documents to plaintiff.

On April 18, 2016, plaintiff filed the instant application to compel the production of the investigative files. Both defendant and PTBC have filed oppositions. ECF Nos. 67, 68.

**II. Standards**

Federal Rule of Civil Procedure 45 allows any party to serve a subpoena that commands a non-party to "produce designated documents, electronically stored information, or tangible things . . . ." Fed. R. Civ. P. 45(a)(1)(iii). Rule 45(d)(3)(A) sets forth the bases for a court to quash or modify a subpoena. It provides, in pertinent part:

> [o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A). "Although irrelevance is not among the litany of enumerated reasons for quashing a subpoena found in Rule 45, courts have incorporated relevance as a factor when determining motions to quash a subpoena." *Moon*, 232 F.R.D. at 637 (citing *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter*, 211 F.R.D. 658, 662 (D. Kan. 2003)). That is, the consideration of undue burden under the rule requires the court to weigh the burden of the

---

counsel for the DCA, but plaintiff's counsel's declaration also fails to support these details. *See* Gaus Decl. ¶ 3; *see also* Fed. R. Evid. 602, 801, 802, 803, 805, 807. However, these conversations are ultimately immaterial to the court's ruling on the application and need not be considered.

1  subpoenaed party against the requested information's relevancy, need of the serving party for the
2  information, the breadth of the information requested, the time period covered by the request, and
3  the particularity with which the request is made. *See id.*

4  Under Rule 45, a person commanded to produce documents may serve a written objection
5  to the subpoena. *See* Fed. R. Civ. P. 45(d)(2)(B). After a written objection has been made, the
6  party serving the subpoena may not have access to the requested documents absent a court order,
7  but may at any time move for an order to compel document production. *Id.*; *see also* Fed. R. Civ.
8  P. 37(a) (any party may upon "reasonable notice" request an order compelling discovery or
9  disclosure).

10  "District courts have 'broad discretion to manage discovery and to control the course of
11  litigation under Federal Rule of Civil Procedure 16.'" *Hunt v. County of Orange*, 672 F.3d 606,
12  616 (9th Cir. 2012) (quoting *Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 833 (9th Cir.
13  2011)).

14  **III. Analysis**

15  Plaintiff contends that the investigative files that are in the possession of PTBC are
16  relevant to his case-in-chief and necessary for evaluating the deposition testimony of both
17  plaintiff and defendant. He also contends that several of the DCA's objections are either moot or
18  without merit to the extent they are based on the service of the subpoena. As for the DCA's
19  privacy objections, plaintiff is willing to limit--and in fact has limited--his subpoena to documents
20  related only to the investigative files pertaining to plaintiff and a now-deceased inmate, Ervin
21  Savoy. Plaintiff also agrees to the redacting of the files where necessary to alleviate any other
22  privacy concerns, and to enter into a protective order. Moreover, he argues that any claim to
23  privacy or confidentiality is outweighed by the prejudice he will suffer if the files are not
24  provided. Additionally, plaintiff asserts that the DCA's reliance on *Estate of Gonzalez* is
25  unavailing. And finally, any claim by the DCA that it cannot produce documents for which it
26  cannot provide a declaration certifying or attesting as to how those records are created lacks merit
27  because plaintiff only seeks documents created by the DCA or its subsidiary, the PTBC.
28  /////

The court need not enter into a detailed analysis of each of these objections because the oppositions submitted by defendant and PTBC assert only a handful of objections.[5]  Defendant, for example, opposes plaintiff's request primarily on the ground that it is beyond the scope of discovery set forth in Judge Mueller's October 20, 2015, order re-opening discovery.  PTBC bases its opposition only on the official information privilege.

**A. Defendant's Objection: Plaintiff's Subpoena Exceeds the Scope of Discovery**

As a general proposition, a party lacks standing under Rule 45(c)(3) of the Federal Rules of Civil Procedure to challenge a subpoena issued to a non-party unless the party claims a personal right or privilege with respect to the documents requested in the subpoena.  *Nova Products, Inc. v. Kisma Video, Inc.*, 220 F.R.D. 238, 241 (S.D.N.Y. 2004); *In re: Cree Inc. Securities Litig*, 220 F.R.D. 443 (M.D.N.C. 2004).  A party's objection that a subpoena issued to a non-party seeks irrelevant information or imposes an undue burden on the non-party is not grounds on which the objecting party has standing to assert, especially where the non-party, itself, has not objected.  *See Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636-37 (C.D. Cal. 2005).  A party may, however, move for a protective order in regard to a subpoena issued to a non-party if it

---

[5] The court will, however, briefly address the DCA's objection based on the Eleventh Amendment, even though it was not argued in the briefs by either defendant or PTBC.  The *Estate of Gonzalez* district court found that the Eleventh Amendment immunizes a state agency from complying with an otherwise enforceable subpoena in a case to which it is not a party.  466 F. Supp. 2d 1226.  As a decision issued by a district court, *Estate of Gonzalez* is not binding here, and in fact has been expressly and regularly rejected by multiple other courts in this district.  *See, e.g.*, *Allen v. Woodford*, 544 F. Supp. 2d 1074, 1079 (E.D. Cal. Apr. 4, 2008) ("To apply *Estate of Gonzalez* would mean that a plaintiff who sues a state official in his individual capacity, a lawsuit specifically authorized by the United States Supreme Court, will never be able to prove his or her case, if any required proof is in the hands of the State's custodian of records."); *see also Jennings v. Moreland*, 2012 WL 761360, at *3 (E.D. Cal. Mar. 6, 2012) ("To the extent there is a split of opinion within this district on that question, the court follows the reasoning expressed in *Allen v. Woodford*, . . . ."); *Johnson v. Dovey*, 2011 WL 5374958, at *2 (E.D. Cal. Nov. 7, 2011) ("*Estate of Gonzalez* is the only case in the Eastern District of California to conclude that Eleventh Amendment immunity renders the State and its agencies immune from a federal court's jurisdiction via subpoena.").  At least one other district has also declined to follow it.  *United States v. University of Massachusetts, Worcester,* 2016 WL 829971, at *2 (D. Mass. March 3, 2016) (noting the conflict of *Estate of Gonzalez* with several circuit court of appeal decisions).  As did the court in *Johnson v. Dovey,* the undersigned finds the detailed analysis and reasoning expressed in *Allen v. Woodford* more persuasive and concludes that the Eleventh Amendment does not bar the discovery sought here.

believes its own interest is jeopardized by the discovery sought by a third party and has standing under Rule 26(c) to seek a protective order regarding subpoenas issued to non-parties which seek irrelevant information. *See Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005); *Washington v. Thurgood Marshal Acad.*, 230 F.R.D. 18, 22 (D.D.C. 2005) (deeming a party's motion to quash subpoenas issued to non-parties as a motion for protective order under Rule 26(c)); *See also Moon*, 232 F.R.D. at 636-37.

Here, defendant objects on multiple grounds, including that the information sought is irrelevant or duplicative. But defendant has not moved for a protective order, and there is no claim of a personal right or privilege with respect to the documents sought. As for defendant's objection based on the scope of discovery, Judge Mueller's October 20, 2015, order re-opened discovery to allow, *inter alia*, the depositions of the persons listed in the parties' joint statement, including Ms. Strickland, and very specific document requests. That being so, plaintiff cannot now be faulted for attempting to obtain the information originally intended to be procured from Ms. Strickland's deposition, who remains effectively unavailable even though her whereabouts are now known. Finally, despite defendant's argument that the information plaintiff seeks can be obtained through already-available sources, such as plaintiff's and defendant's deposition testimony, a review of the attachments to the investigation report convinces the undersigned that other, relevant information may be contained therein and that is likely not available by simply reviewing the parties' deposition transcripts. *See* Decl. of Demond L. Philson Decl. ¶ 3 (describing 40 types of documents included in the investigation report).

Defendant's objection regarding the scope of discovery is thus overruled.

**B.  PTBC's Objection: Official Information Privilege**

The Supreme Court has long noted that privileges are disfavored. *Jaffee v. Redmond*, 518 U.S. 1, 9 (1996). "The party asserting an evidentiary privilege has the burden to demonstrate that the privilege applies to the information in question." *Tornay v. United States*, 840 F.2d 1424, 1426 (9th Cir. 1988). Privileges are to be "strictly construed" because they "impede full and free discovery of the truth." *Eureka Fin. Corp. v. Hartford Acc. and Indem. Co.*, 136 F.R.D. 179, 183

/////

(E.D. Cal. 1991). "If the privilege is worth protecting, a litigant must be prepared to expend some time to justify the assertion of the privilege." *Id.*

In civil rights cases brought under section 1983, questions of privilege are resolved by federal law. *Kerr v. United States Dist. Ct. for the N. Dist. of Cal.*, 511 F.2d 192, 197 (9th Cir. 1975). "State privilege doctrine, whether derived from statutes or court decisions, is not binding on federal courts in these kinds of cases." *Kelly v. City of San Jose*, 114 F.R.D. 653, 655-56 (N.D. Cal. 1987).

"Federal common law recognizes a qualified privilege for official information." *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir. 1990) (citing *Kerr*, 511 F.2d at 198).

The discoverability of official documents should be determined under the "balancing approach that is moderately pre-weighted in favor of disclosure." *Kelly*, 114 F.R.D. at 661. The party asserting the privilege must properly invoke the privilege by making a "substantial threshold showing." *Id.* at 669. The party must file an objection and submit a declaration or affidavit from a responsible official with personal knowledge of the matters attested to by the official. *Id.* The affidavit or declaration must include (1) an affirmation that the agency has generated or collected the requested material and that it has maintained its confidentiality, (2) a statement that the material has been personally reviewed by the official, (3) a description of the governmental or privacy interests that would be threatened by disclosure of the material to the plaintiff or plaintiff's attorney, (4) a description of how disclosure under a protective order would create a substantial risk of harm to those interests, and (5) a projection of the harm to the threatened interest or interests if disclosure were made. *Id.* at 670. Requiring the defendant to make a "substantial threshold showing" allows the plaintiff to assess the defendant's privilege assertions and decide whether they should be challenged. *Id.*

In an attempt to comply with these requirements, counsel for PTBC submits his own declaration wherein he asserts that he has reviewed the investigative files at issue and finds that disclosure would result in dire consequences, including the release of witness statements that were made in confidence, subject witnesses to harassment and manipulation by inmates who would label them a "snitch," reduce witness participation in investigations, and disclose

1  confidential investigative techniques and methods.  *See* Philson Decl. ¶¶ 4-7.  This does not
2  satisfy the test.

3  As the entity asserting the privilege, PTBC must properly invoke the privilege by making
4  a "substantial threshold showing," which it has not done here.  *Kelly*, 114 F.R.D. at 669.  As an
5  initial matter, PTBC is required to submit "a declaration or affidavit, under oath and penalty of
6  perjury, from a responsible official *within the agency* who has personal knowledge of the
7  principal matters to be attested to in the affidavit or declaration." *Id.* at 669 (emphasis added).
8  This requirement cannot be satisfied by submitting the declaration of its own attorney.  *Id.*  ("Nor
9  will an affidavit from the lawyer representing the agency or officers in the litigation suffice.  It is
10 essential that the affidavit come from an official in the affected agency.")  This factor, standing
11 alone, warrants overruling PTBC's objection.  But even if the declaration was submitted by a
12 proper official, the court rejects PTBC's boilerplate claims of harm.  *Id.* at 672 ("A general claim
13 of harm to the public interest would not be sufficient to overcome the burden placed on the party
14 seeking to shield material from disclosure."); *Miller v. Pancucci*, 141 F.R.D. 292, 302 (C.D. Cal.
15 1992) ("[A] general claim of harm is insufficient to overcome the burden placed on the party
16 resisting disclosure.");  *see also, e.g., Bird v. Mayhew*, 2016 WL 374555, at *6 (E.D. Cal. Feb. 1,
17 2016) ("Defendant asserts the official information privilege by presenting boilerplate objections
18 that fails to comply with the above requirements."); *Johnson v. Sandy*, 2014 WL 4631642, at *11
19 (E.D. Cal. Sept. 15, 2014) (rejecting "broad objections and boilerplate claims of confidentiality
20 and policy rights").

21 The court therefore overrules PTBC's objection based on the official information
22 privilege.

23 **IV. Conclusion**

24 For the foregoing reasons, it is ORDERED that plaintiff's April 18, 2016, ex parte
25 application (ECF No. 65) is GRANTED.  Within **seven** days from the date of this Order, plaintiff
26 and PTBC shall meet-and-confer regarding the scope of the subpoena and submit to the court a
27 mutually-drafted protective order.  All documents responsive to the subpoena, limited by
28 /////

relevance and privacy concerns, and subject to the protective order, shall be produced to plaintiff within **ten** days from the date of this Order.

DATED:  May 23, 2016.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE